IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| WILLIAM B.,[1] | |
| Plaintiff, | |
| vs. | Case No. 3:21-CV-98-JMK-KFR |
| KILOLO KIJAKAZI,[2] Commissioner of Social Security, | |
| Defendant. | |

**PROPOSED FINDING OF FACT AND RECOMMENDATION TO REMAND FOR FURTHER PROCEEDINGS**

## I.    FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff, William B., filed an application with the Social Security Administration ("SSA") for Title II Disability Insurance Benefits on January 8, 2019, alleging disability beginning March 7, 2018, due to an opening in his

---

[1] Plaintiff's name is partially redacted in compliance with Fed. R. Civ. P. 5.2(c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States. *See* Memorandum, Committee on Court Administration and Case Management of the Judicial Conference of the United States (May 1, 2018), https://www.uscourts.gov/sites/default/files/18-cv-l-suggestion_cacm_0.pdf.

[2] Kilolo Kijakazi is now the Acting Commissioner of Social Security and is automatically substituted as a party pursuant to Fed. R. Civ. P. 25(d). *See also* Section 205(g) of the Social Security Act, 42 U.S.C. 405(g) (action survives regardless of any change in the person occupying the office of Commissioner of Social Security).

internal stomach, colostomy bag, hernia, and pancreatitis. Plaintiff was born on August 23, 1972, and was 45 years old on the alleged disability onset date.[3] Plaintiff worked in construction since high school, specifically as a concreter and pipeline laborer.[4] Plaintiff met the insured status requirements of the Social Security Act through December 31, 2021.[5]

Plaintiff's application was initially denied on July 11, 2019,[6] and he requested a hearing before an Administrative Law Judge ("ALJ"). On August 19, 2020, Plaintiff appeared and testified pro se in Anchorage, Alaska, before ALJ LaCara. On September 21, 2020, the ALJ issued an unfavorable ruling against Plaintiff. On February 26, 2021, the Appeals Council denied Plaintiff's request to review the ALJ's decision,[7] making the Commissioner's decision final.

Plaintiff exhausted his administrative remedies and, represented by counsel, filed a complaint on April 19, 2021, against Defendant Kijakazi, seeking relief from this Court.[8] After seeking an extension, Defendant filed

---

[3] Tr. 17; 20 C.F.R. 404.1563.
[4] Tr. 17.
[5] In order to qualify for disability benefits under Title II, a claimant must have "insured status" and show his disability began by his date last insured. 42 U.S.C. §§ 423(a)(1), (c)(2), (d)(1)(A).
[6] Tr. 19.
[7] Tr. 1-4.
[8] Dkt. 1.

Report and Recommendation
*Barklow v. Kijakazi*
3:21-CV-98-JMK-KFR                    Page 2

her answer to the complaint on August 10, 2021, seeking affirmation of the ALJ's decision.[9]

After seeking an extension, Plaintiff filed his opening brief on September 21, 2021, asking that the Commissioner's decision be vacated and that this matter be remanded for further administrative proceedings.[10] Plaintiff argues that the ALJ committed legal errors in concluding that Plaintiff is not disabled within the meaning of the Social Security Act.[11] Defendant filed a response brief on October 21, 2021, seeking affirmation of the ALJ's decision.[12] Plaintiff filed a reply on November 4, 2021.[13] Oral argument was not requested and is not necessary to the Court's decision.

The District Court has jurisdiction to hear an appeal from a final decision of the Commissioner of Social Security.[14] For the reasons set forth below, this Court recommends that Plaintiff's Motion for Remand at **Docket 18** be **GRANTED,** the Commissioner's final decision be **VACATED,** and the case be **REMANDED** for further proceedings.

---

[9] Dkt. 14 at 2.
[10] Dkt. 18 at 23. Also phrased in the Docket as Motion to Reverse the Commissioner's Decision and Remand to the Agency.
[11] Dkt. 18.
[12] Dkt. 19 at 13.
[13] Dkt. 20.
[14] 42 U.S.C. § 405(g).
Report and Recommendation
*Barklow v. Kijakazi*
3:21-CV-98-JMK-KFR                    Page 3

## II.  STANDARD OF REVIEW

A decision by the Commissioner to deny disability benefits will not be overturned unless it either is not supported by substantial evidence or is based upon legal error.[15]  "Substantial evidence" has been defined by the Supreme Court as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[16]  Such evidence must be "more than a mere scintilla," but may be "less than a preponderance."[17]

In reviewing the SSA's determination, the Court considers the evidence in its entirety, weighing both the evidence that supports and that which detracts from the ALJ's conclusion.[18]  If the evidence is susceptible to more than one rational interpretation, the ALJ's conclusion must be upheld.[19]  A reviewing court may only consider the reasons provided by the ALJ in the disability determination and "may not affirm the ALJ on a ground upon which [she] did not rely."[20]  An ALJ's decision will not be reversed if it is based on

---

[15] *Matney ex rel. Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992) (citing *Gonzalez v. Sullivan*, 914 F.2d 1197, 1200 (9th Cir. 1990)).

[16] *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).

[17] *Perales*, 402 U.S. at 401; *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975) (per curiam).

[18] *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985).

[19] *Gallant v. Heckler*, 753 F.2d 1450, 1453 (9th Cir. 1984) (citing *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971)).

[20] *Garrison v. Colvin*, 759 F.3d 995, 1010 (9th Cir. 2014).

"harmless error," meaning that the error "is inconsequential to the ultimate nondisability determination, or that, despite the legal error, the agency's path may reasonably be discerned, even if the agency explains its decision with less than ideal clarity."[21]

## III.   DETERMINING DISABILITY

### A. Definition of Disability

The Social Security Act ("the Act") provides for the payment of disability insurance to individuals who have contributed to the Social Security program and who suffer from a disability.[22] Disability is defined in the Act as follows: "[I]nability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."[23]  The Act further provides:

> An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied

---

[21] *Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015) (internal quotation marks and citations omitted).
[22] 42 U.S.C. § 423(a).
[23] 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

Report and Recommendation
*Barklow v. Kijakazi*
3:21-CV-98-JMK-KFR                     Page 5

for work. For purposes of the preceding sentence (with respect to any individual), "work which exists in the national economy" means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.[24]

## B. Five-Step Analysis

The Commissioner established a five-step process for determining disability within the meaning of the Act.[25]  A claimant bears the burden of proof at steps one through four in order to make a prima facie showing of disability.[26]  If a claimant establishes a prima facie case, the burden of proof then shifts to the agency at step five to demonstrate that the claimant can perform a significant number of other jobs in the national economy.[27]  The Commissioner can meet this burden in two ways: "(a) by the testimony of a vocational expert, or (b) by reference to the Medical-Vocational Guidelines at 20 C.F.R. pt. 404, subpt. P, app. 2."[28]

The steps, and the ALJ's findings in this case, are as follows:

---

[24] 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

[25] 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

[26] *Treichler v. Comm'r Soc. Sec. Admin.*, 775 F.3d 1090, 1096 n.1 (9th Cir. 2014) (quoting *Hoopai v. Astrue*, 499 F.3d 1071, 1074–75 (9th Cir. 2007)); see also *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).

[27] *Treichler*, 775 F.3d at 1096 n.1; *Tackett*, 180 F.3d at 1098 (emphasis in original).

[28] *Tackett*, 180 F.3d at 1101.

**Step 1.** Determine whether the claimant is involved in "substantial gainful activity."[29]

- *The ALJ concluded that Claimant (Plaintiff) had not engaged in substantial gainful activity since his alleged onset date.*[30]

**Step 2.** Determine whether the claimant has a medically severe impairment or combination of impairments. A severe impairment significantly limits a claimant's ability to do basic work activities and does not consider age, education, or work experience. The severe impairment or combination of impairments must satisfy the 12-month duration requirement.

- *The ALJ determined that Claimant suffered from severe impairments, including ventral hernia; status post multiple abdominal surgeries secondary to necrotizing pancreatitis; and obesity.*[31]

**Step 3.** Determine whether the impairment or combination of impairments meets or equals the severity of any of the listed impairments found in 20 C.F.R. pt. 404, subpt. P, app.1, precluding substantial gainful

---

[29] 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).
[30] Tr. 13.
[31] Tr. 13.

activity. If the impairment is the equivalent of any of the listed impairments, and meet the duration requirement, the claimant is conclusively presumed to be disabled.[32] If not, the evaluation goes on to the fourth step.

- *The ALJ determined that Claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. pt. 404, subpt. P, app.1.*[33]

Before proceeding to Step 4, a claimant's residual functional capacity ("RFC") is assessed. Once determined, the RFC is used at both Step 4 and Step 5. An RFC assessment is a determination of what a claimant is able to do on a sustained basis despite the limitations from her impairments, including impairments that are not severe.[34]

- *The ALJ concluded that Claimant had the RFC to perform light work as defined in 20 C.F.R. § 404.1567(b) except he is limited to frequent climbing [of] ramps or stairs, balancing, stooping, kneeling, crouching and crawling. He cannot climb ladders, ropes or scaffolds, and he must avoid all unprotected heights.*[35]

---

[32] 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).
[33] Tr. 13.
[34] 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).
[35] Tr. 14.

Report and Recommendation
*Barklow v. Kijakazi*
3:21-CV-98-JMK-KFR                    Page 8

**Step 4.** Determine whether the claimant is capable of performing past relevant work. At this point, the analysis considers whether past relevant work requires the performance of work-related activities that are precluded by the claimant's RFC. If the claimant can still do his past relevant work, the claimant is deemed not to be disabled.[36]

- *The ALJ found that Claimant was unable to perform any past relevant work.*[37]

**Step 5.** Determine whether the claimant is able to perform other work in the national economy in view of his age, education, and work experience, and in light of the RFC. If so, the claimant is not disabled. If not, the claimant is considered disabled.[38]

- *The ALJ considered the claimant's age, education, work experience, and RFC to determine that there are jobs that exist in significant numbers in the national economy that the claimant can perform, including laundry sorter, marker II, and assembler, small products.*[39] *In reaching her conclusions, the ALJ relied extensively on the testimony of the vocational expert.*

---

[36] 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).
[37] Tr. 17.
[38] 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).
[39] Tr. 18.

Following the five-step analysis, the ALJ concluded that claimant had not been under a disability from March 7, 2018, the alleged onset date, through the date of her decision, September 21, 2020.[40]

## IV. DISCUSSION

### A. Issues on Appeal

In his opening brief, Plaintiff argues that the ALJ's decision was not supported by substantial evidence and that she committed legal errors that led to denial of Plaintiff's disability status. Specifically, he contends that the ALJ erred by not developing the record; failing to properly consider the nature and intensity of Plaintiff's limitations; and failing to offer clear and convincing reasons for rejecting Plaintiff's subjective complaints.[41] In response, the Commissioner argues that this Court should affirm the ALJ's decision because she applied the correct legal standards and supported her decision with substantial evidence.[42]

#### i. The ALJ Failed to Fully and Fairly Developed the Record.

While Social Security claimants bear the burden of establishing their disabilities,[43] ALJs have a "special duty to fully and fairly develop the record

---

[40] Tr. 18.
[41] Dkt. 18 at 1.
[42] Dkt. 19 at 13.
[43] 20 C.F.R. §§ 404.1512(a)(1) & 416.912(a)(1).

Report and Recommendation
*Barklow v. Kijakazi*
3:21-CV-98-JMK-KFR                    Page 10

and to assure that the claimant's interests are considered."[44]  The Ninth Circuit has found that the ALJ's duty to develop the record increases when the claimant is unrepresented, as Plaintiff was in this case, and thus unable to protect his own interests.[45]  The existence of ambiguous evidence or a finding that the record is inadequate to allow for proper evaluation triggers an ALJ's duty to "develop the record further"[46] and "conduct an appropriate inquiry."[47]  An ALJ "may discharge this duty in several ways, including: subpoenaing the claimant's physicians, submitting questions to the claimant's physicians, continuing the hearing, or keeping the record open after the hearing to allow supplementation of the record."[48]

The ALJ did not fully develop the record in this case.  In addition to considering the evidence submitted by Plaintiff, the ALJ took testimony from a non-examining physician, Dr. Gaeta, and also considered a written opinion from non-examining physician Dr. Caspari.  However, given the nature of the opinions offered by these medical experts, and the contradictory evidence

---

[44] *Celaya v. Halter*, 332 F.3d 1177, 1183 (9th Cir. 2003) (quoting *Brown v. Heckler*, 713 F.2d 441, 443 (9th Cir. 1983)).
[45] *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001).
[46] *Mayes v. Massanari*, 276 F.3d 453, 459–60 (9th Cir. 2001).
[47] *Tonapetyan*, 242 F.3d at 1150 (quoting *Smolen v. Chater*, 80 F.3d 1273, 1288 (9th Cir. 1996).
[48] *Id.*

presented by Plaintiff that undermines those opinions, it cannot be said that the ALJ's inquiry was sufficient under the law.[49]

Dr. Caspari stated in his written opinion that Plaintiff's medical records showed "mostly normal physical exams" with the presence of an ostomy bag.[50] Dr. Caspari advised that Plaintiff could occasionally lift and carry 50 pounds, frequently lift and carry 25 pounds, and stand or walk about six hours in an eight-hour work day.[51] However, as the ALJ noted in her opinion, Dr. Caspari was unable to review the entire record,[52] thereby making the opinion of limited value.

The ALJ took testimony from Dr. Gaeta on August 19, 2020. Dr. Gaeta testified that Plaintiff suffered from severe pancreatitis in 2018 with prolonged hospitalization for renal failure, dialysis, and removal of a significant amount of his bowel.[53] Dr. Gaeta concluded that because of Plaintiff's injuries, he was limited to lifting 20 pounds on occasion, as

---

[49] *Compare Struck v. Astrue*, 247 Fed. Appx. 84 (9th Cir. 2007) (unreported) (holding that additional inquiry was required where "both the ALJ and the medical expert who testified at the ALJ's request concluded that inpatient treatment records from two recent hospitalizations of Struck were important to assessing her claim.")
[50] Tr. 91-92.
[51] Tr. 90.
[52] Tr. 17.
[53] Tr. 53.

Report and Recommendation
*Barklow v. Kijakazi*
3:21-CV-98-JMK-KFR                    Page 12

opposed to the 50 pounds proposed by Dr. Caspari,[54] and could perform medium work, standing and walking for six hours daily with no postural limitations.[55]

The ALJ relied on Dr. Gaeta's opinion over Dr. Caspari's. In adopting Dr. Gaeta's opinion, the ALJ said it was persuasive because "he reviewed the entire record," and his opinion was "consistent with the overall evidence."[56] This conclusion is troubling for two reasons. First, Dr. Gaeta only acknowledged reviewing Plaintiff's medical evidence labeled 1F through 18F,[57] and does not appear to have been informed at all by Plaintiff's testimony or information from the ALJ regarding Plaintiff's subjective complaints, "current medications, or sources and types of treatments."[58]

Second, Dr. Gaeta initially failed to identify Plaintiff's hernia, a significant medical issue that was one of the bases for Plaintiff's original claim. In his initial testimony, Dr. Gaeta stated that he reviewed the record and found that Plaintiff suffered from severe pancreatitis in 2018 with prolonged hospitalization for renal failure, dialysis, and removal of a

---

[54] Tr. 57-58.
[55] Tr. 54-55.
[56] Tr. 15.
[57] Tr. 52. *See also* Court Transcript Index.
[58] *See* Hearings, Appeals, and Litigation Law Manual ("HALLEX") I-2-6-70(b).

Report and Recommendation
*Barklow v. Kijakazi*
3:21-CV-98-JMK-KFR                Page 13

significant amount of his bowel.[59] Even after being asked by the ALJ about Plaintiff's hernia, Dr. Gaeta continued with his original opinion, telling the ALJ that he didn't see "anything documentation(sic) in the recent notes."[60] In response to Plaintiff's questions about the hernia, Dr. Gaeta reiterated he did not see any description that the hernia was very large or affecting Plaintiff in any way.[61]

Only after reviewing the documents during the hearing—and only after being specifically questioned two different times about the issue—did Dr. Gaeta identify that Plaintiff's medical records did in fact contain evidence of a "large ventral hernia," which physicians planned to surgically repair. [62] Moreover, the evidence was such that it forced Dr. Gaeta to revise his medical opinion to lower the weight Plaintiff could lift and the duration and nature of work Plaintiff could perform. The two doctors' failures to review the entirety of the record in this case, and Dr. Gaeta's hasty review of the entirety of the record only during a break in the hearing required the ALJ to diligently exercise their obligation to fully and fairly develop the record. It does not appear that was not done in this case.

---

[59] Tr. 53.
[60] Tr. 57.
[61] *Id.*
[62] Tr. 2560, 2675.

The concerns about Dr. Gaeta's opinion, and the ALJ's obligation to mediate those concerns in light of their reliance on that opinion, are apparent in the record. In addition to initially failing to identify Plaintiff's hernia, Dr. Gaeta also appeared to misstate the severity of Plaintiff's original hospitalization in this case, and the success of his treatment for those conditions. Dr. Gaeta stated that Plaintiff "was hospitalized, I believe, for several weeks [in March 2018]," but in the "latter part of 2019 he was doing pretty well."[63] The medical record belies the fact that Plaintiff had improved during this time frame.

Dr. Gaeta's time frames are inconsistent with the medical record. Plaintiff's 11-week hospitalization from March 7, 2018, through July 26, 2018,[64] is by any measure longer than the "several weeks" reported by Dr. Gaeta. Such a distinction is not a matter of semantics and should have elicited further inquiry from the ALJ as to the precise duration of Plaintiff's illness.[65]

---

[63] Tr. 53.

[64] *Id*.

[65] *See Mayes*, 276 F.3d at 456-57 (9th Cir. 2001) (noting that one of the conditions triggering an ALJ's duty to develop the record further is "when there is ambiguous evidence.")

Report and Recommendation
*Barklow v. Kijakazi*
3:21-CV-98-JMK-KFR                    Page 15

In addition, the ALJ did not question what Dr. Gaeta meant by the "latter part of 2019."[66] Dr. Gaeta's assertion that Plaintiff was "doing pretty well" during this time period is contradicted by Plaintiff's medical history, which documents multiple medical issues in mid to late 2019. For instance, on June 21, 2019, Plaintiff discovered a "knot" in his lower abdomen that treating physicians in Valdez, Alaska ultimately determined required a higher level of care, leading to Plaintiff's transfer via Medevac for surgery.[67] This incident was followed by six more doctor visits in June and July for related treatment, during which doctors stated that Plaintiff's cholecystostomy tube was no longer functioning, and that he was at high risk for decompensation.[68] Plaintiff required extensive additional treatments in August, October and November in 2019, stemming back to his initial hospitalization.[69] On November 12, 2019, medical staff noted that Plaintiff would need his gallbladder removed, and that he was scheduled to undergo "abdominal wall

---

[66] If Dr. Gaeta meant to say the latter part of 2018, this assertion is also questionable and should have elicited follow-up from the ALJ. Nonetheless, the ALJ failed to clarify or elicit details from Dr. Gaeta about the lengthy hospitalization or time thereafter.
[67] Tr. 2469.
[68] Tr. 2482.
[69] Dkt. 18 at 9-10.

reconstruction, ileostomy take down with ileorectal anastomosis and cholecystectomy" in Seattle, Washington, the following year.[70]

Plaintiff's testimony and reports to his treating doctors demonstrate ongoing and consistent medical issues. Plaintiff complained of pain and discomfort stemming from his original hospitalization in March 2018, as well as subsequent complications, including pain at his drain site and discomfort when drains and tubes would catch on objects during normal movements.[71] The ALJ failed to resolve the material discrepancy between Dr. Gaeta's testimony that Plaintiff's severe pancreatitis and gallbladder problems "largely resolved by late 2018"[72] and Plaintiff's further surgeries and hospitalizations in 2018, his June 2019 admittance to the hospital for a high level of care, surgery, drainage and wound care, his ongoing treatments in the Fall of 2019, and his planned surgery in 2020.

> ii. **The ALJ Failed to Properly Consider the Nature and Intensity of Plaintiff's Limitation and Failed to Offer Clear and Convincing Reasons for Rejecting Plaintiff's Subjective Complaints.**

The ALJ concluded that Claimant had the RFC to perform light work as defined in 20 C.F.R. § 404.1567(b); except he is limited to frequent climbing

---

[70] Tr. 2681.
[71] Tr. 2675.
[72] Tr. 53-57.

of ramps or stairs, balancing, stooping, kneeling, crouching and crawling, and he cannot climb ladders, ropes or scaffolds, and he must avoid all unprotected heights. This opinion was based on primarily on the opinion of Dr. Gaeta and did not credit Plaintiff's subjective complaints of disability. This conclusion was in error.

In assessing the credibility of a claimant's testimony regarding subjective pain or the intensity of symptoms, the ALJ must first determine whether there is "objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged," but it cannot provide the only basis for rejecting a claimant's subjective symptom testimony.[73] An ALJ may discount a claimant's subjective complaints when they are inconsistent with the medical records and an ALJ is not required to believe every allegation of disabling pain, or else disability benefits would be available for the asking, a result plainly contrary to the Act.[74] However, the ALJ is also responsible for resolving conflicts in medical testimony, and resolving ambiguity. Determining whether inconsistencies are material (or are in fact inconsistencies at all)

---

[73] *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005) ("Although lack of medical evidence cannot form the sole basis for discounting pain testimony, it is a factor that the ALJ can consider in his credibility analysis.").

[74] *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1999).

and whether certain factors are relevant to discount the opinions falls within this responsibility.[75]

If there is no evidence of malingering, "the ALJ can only reject the claimant's testimony about the severity of the symptoms if she gives 'specific, clear and convincing reasons' for the rejection."[76]  Subjective symptom evaluation "is not an examination of an individual's character," and requires the ALJ to consider all of the evidence in an individual's record when evaluating the intensity and persistence of symptoms. The ALJ must examine "the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record."[77] Furthermore, while a claimant need not "vegetate in a dark room" in order to be eligible for benefits, the ALJ may discredit a claimant's testimony when the claimant reports participation in everyday activities

---

[75] *Morgan v. Comm'r of Social Sec. Admin.*, 169 F.3d 595, 603 (9th Cir. 1999).

[76] *Smolen*, 80 F.3d at 1281-82.

[77] Social Security Ruling ("SSR") 16-3p, *available at* 2016 WL 1119029. SSRs reflect the official interpretation of the SSA.  While SSRs do not carry the 'force of law,' they are binding on ALJs nonetheless. *Bray v. Comm'r Soc. Sec. Admin.*, 554 F.3d 1219, 1224 (9th Cir. 2009).

indicating capacities that are transferable to a work setting.[78]  Even where

those activities suggest some difficulty functioning, they may be grounds for

discrediting the claimant's testimony to the extent that they contradict claims

of a totally debilitating impairment.[79]

The ALJ determined that Plaintiff's impairments could reasonably be

expected to cause some of the alleged symptoms that Plaintiff described.[80]

The ALJ went on to find that Plaintiff's statements concerning the intensity,

persistence, and limiting effects of these symptoms were inconsistent with

the medical evidence and other evidence in the record.[81]  As detailed above,

the ALJ failed to fully develop the medical evidence record as it relates to Dr.

Gaeta's testimony and opinion.  Accordingly, it cannot be said that the ALJ's

reliance on that opinion to discredit the Plaintiff's subjective complaints was

proper.

Moreover, it is not apparent that the other bases relied upon by the ALJ

to discredit Plaintiff's subjective complaints meet the "specific, clear, and

convincing standard."  Specifically, the ALJ cited discrepancies in Plaintiff's

---

[78]  *Morgan v. Comm'r Soc. Sec. Admin.,* 169 F.3d 595, 600 (9th Cir.1999); *Fair,* 885 F.2d at 603.

[79]  *Turner,* 613 F.3d at 1225*; Valentine,* 574 F.3d at 693.

[80]  Tr. 15.

[81]  Tr. 15-16.

testimony regarding wheelchair usage and ability to drive. However, as it relates to these matters, it is not apparent that the ALJ sufficiently attempted to clarify these inconsistencies by questioning Plaintiff, nor did the ALJ explain how Plaintiff's participation in limited everyday activities would indicate capacities that are transferable to a work setting or how they may contradict a totally debilitating impairment.[82]

The ALJ discounted Plaintiff's testimony that he needed to use a wheelchair "every day."[83] This conclusion was supported by medical records from late 2018 that indicated that Plaintiff was "ambulatory" with a steady gait.[84] The ALJ similarly found Plaintiff's testimony about his ability to drive himself to be unreliable in light of Plaintiff's statement to a doctor that he would "drive himself" to his next appointment,[85] and his testimony at the August 2020 hearing that he drove to the store approximately once a week.[86]

Both of these conclusions were inconsistent with Plaintiff's own statements, and were also inconsistent with some of the medical evidence in the record. Following his discharge from the hospital in June 2018, Plaintiff

---

[82] *Burrell v. Colvin*, 775 F.3d 1133, 1138 (9th Cir. 2014).
[83] Dkt. 18 at 20.
[84] E.g., Tr. 2459, 2757, 2771, 2775, 2777, 2779, 2783.
[85] Tr. 2460.
[86] Tr. 60.

required a four-wheeled walker for functional tasks, and he was ordered a padded wheelchair cushion for prolonged wheelchair use.[87] His wife also received training to assist with transfers and ambulation.[88] And while Plaintiff walked independently to some appointments, in August 2018 he collapsed while trying to enter the clinic and was lifted into a wheelchair.[89] In November 2019, Plaintiff needed a wheelchair following his surgery to replace his gallbladder tube.[90] Plaintiff's ability to ambulate on occasion does not conclusively indicate that he did not need his wheelchair for some of his mobility on a daily basis.[91]

Likewise, Plaintiff's statement that he drove to the store was followed up with a statement that he and another person "go to the store" about once per week.[92] Plaintiff testified that he did not drive because he had a big truck and could not stand.[93] Given this evidence, Plaintiff's use of the word "drive"

---

[87] Tr. 678, 691.
[88] Tr. 691.
[89] Tr. 694.
[90] Tr. 2723.
[91] *See Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001) ("The mere fact that a plaintiff has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from [his] credibility as to [his] overall disability. One does not need to be 'utterly incapacitated' in order to be disabled.") (internal citation omitted).
[92] Tr. 65.
[93] Tr. 240.

Report and Recommendation
*Barklow v. Kijakazi*
3:21-CV-98-JMK-KFR                    Page 22

may very well have referred to being a passenger in the vehicle as opposed to its operator.

The ALJ failed to resolve these inconsistencies with sufficient evidence to support her conclusion that Plaintiff's complaints were not credible. The ALJ relied heavily on Dr. Gaeta's review of medical records and medical opinion in undermining Plaintiff's complaints, stating that there were "few, if any, complaints or findings showing that the claimant had problems with walking, standing, or other areas of function."[94] This reliance was misplaced in light of the ALJ's failure to fully develop the record as it relates to Dr. Gaeta's review of the medical records and the basis for his opinion. The ALJ's unreasonable reliance on Dr. Gaeta's testimony did not provide a clear and convincing basis to discounting Plaintiff's allegations of debilitating limitations.[95]

## V. INSTRUCTIONS ON REMAND

The ALJ failed to develop the record and did not properly weigh Plaintiff's subjective complaints. The result was not harmless since it resulted in Plaintiff's non-disability status. As a result, the RFC may not include all of Plaintiff's limitations or provide a proper disability diagnosis.

---

[94] Tr. 16.
[95] Tr. 15.

Report and Recommendation
*Barklow v. Kijakazi*
3:21-CV-98-JMK-KFR                    Page 23

Plaintiff asks the Court to vacate the final agency decision and remand to the Commissioner for a de novo hearing and a new decision. The "ordinary remand rule" applies to disability cases. Under this rule, if "the reviewing court simply cannot evaluate the challenged agency action on the basis of the record before it, the proper course ... is to remand to the agency for additional investigation or explanation."[96] For the reasons stated above, this Court recommends this case be **REMANDED** to the Commissioner for further administrative proceedings consistent with this order. On remand, this Court recommends that the ALJ clarify Dr. Gaeta's testimony or otherwise fully and fairly develop the record regarding Plaintiff's subjective symptoms and other impairments, and allow for additional evidence to be submitted as appropriate. This Court recommends that the ALJ conduct a de novo hearing and issue a new decision with appropriate findings at each step of the sequential evaluation.

## VI. CONCLUSION

The Court, having carefully reviewed the administrative record, finds that the ALJ's determinations are not free from legal error or entirely

---

[96] *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099 (9th Cir. 2014) (quoting *Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 744 (1985)).

Report and Recommendation
*Barklow v. Kijakazi*
3:21-CV-98-JMK-KFR                    Page 24

supported by substantial evidence in the record. The ALJ's legal errors were not harmless and thus require remand. Based on the foregoing, this Court recommends that Claimant's motion at **Docket 18** be **GRANTED** and this matter be **REMANDED** for further proceedings.

### NOTICE OF THE RIGHT TO OBJECT

Under 28 U.S.C. § 636(b)(1), a district court may designate a magistrate judge to hear and determine matters pending before the Court. For dispositive matters, a magistrate judge reports findings of fact and provides recommendations to the presiding district court judge.[97] A district court judge may accept, reject, or modify, in whole or in part, the magistrate judge's order.[98]

A party may file written objections to the magistrate judge's order within 14 fourteen days.[99] Objections and responses are limited to five (5) pages in length and should not merely reargue positions previously presented. Rather, objections and responses should specifically identify the findings or recommendations objected to, the basis of the objection, and any legal authority in support. Reports and recommendations are not appealable

---

[97] 28 U.S.C. § 636(b)(1)(B).
[98] *Id.*
[99] *Id.*

orders.  Any notice of appeal pursuant to Fed. R. App. P. 4(a)(1) should not be filed until entry of the district court's judgment.[100]

DATED this 18th day of July, 2022, at Anchorage, Alaska

/s/ Kyle F. Reardon
KYLE F. REARDON
United States Magistrate Judge
District of Alaska

---

[100] *See Hilliard v. Kincheloe*, 796 F.2d 308 (9th Cir. 1986).

Report and Recommendation
*Barklow v. Kijakazi*
3:21-CV-98-JMK-KFR                                    Page 26